**Affirmed and En Banc Majority, Concurring, and Dissenting Opinions filed December 10, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00154-CR

---

**THE STATE OF TEXAS, Appellant**

**V.**

**JOHN WESLEY BALDWIN, Appellee**

---

**On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1527611**

---

### EN BANC MAJORITY OPINION

This is an interlocutory appeal from an order granting a motion to suppress. In August 2020, a panel of this court reversed the trial court's suppression order as to cellphone evidence and remanded the case to the trial court for further proceedings. Appellee John Wesley Baldwin filed a motion for rehearing and a motion for en banc reconsideration. A majority of the en banc court voted to grant the motion for en banc reconsideration, and the en banc court has reconsidered this

appeal. Today, the en banc court withdraws the majority opinion, vacates the judgment of August 6, 2020, and issues this en banc majority opinion and judgment.

We address whether a search-warrant affidavit set forth facts sufficient to establish probable cause for the search of a cellphone. The trial court ruled that the affidavit was insufficient and suppressed all evidence obtained from the cellphone. We affirm.

## *Background*

While committing a robbery, two masked gunmen shot and killed a homeowner. The homeowner's brother witnessed the offense and said the offenders were Black men who fled the scene in a white, four-door sedan. Around that time, a neighbor observed a white, four door sedan exiting the neighborhood at a "very high rate of speed."

Investigators obtained security footage from a nearby residence which showed a white sedan in the neighborhood on the day before (and on the day of) the murder. Four times, the white sedan entered the street, which ended in a cul-de-sac, and circled the neighborhood where the murder later occurred. A neighbor told investigators that a white sedan had passed by his residence three times shortly before the murder. That neighbor could only describe the driver as a "large Black male."

Another neighbor said that she had seen a white, four-door sedan in the neighborhood on the day before the murder. She said she saw two Black men in the sedan. She took a picture of the sedan and captured the sedan's license plate. Based on this information, investigators learned that the sedan in the photo was registered to Baldwin's stepfather, who told investigators that he had sold the sedan to Baldwin and Baldwin was living at his girlfriend's apartment.

2

Investigators located the sedan at that apartment four days after the murder. Baldwin eventually drove away in the sedan, and investigators followed him in unmarked units but requested a marked unit to develop probable cause to stop Baldwin for a traffic violation. Officers in a marked unit eventually pulled Baldwin over for making an unsafe lane change. Baldwin was arrested for the traffic violation, for driving with an expired license, and for failing to show identification on demand. Investigators also impounded the sedan.

After his arrest, Baldwin gave a statement and consented to a search of the sedan. A cellphone was found in the sedan, but Baldwin would not consent to a cellphone search. Investigators applied for a warrant to search the cellphone, and a magistrate issued the search warrant.

Baldwin moved to suppress the evidence of his statements on the grounds that he did not commit a traffic violation and to suppress the cellphone evidence as fruit of the poisonous tree. Alternatively, Baldwin argued the affidavit in support of the search warrant was legally insufficient to support a finding of probable cause.

The Honorable Denise Collins held a hearing on the motion. After considering the evidence and arguments of counsel, she orally ruled that the traffic stop was lawful and denied the motion to suppress Baldwin's statements. As for the cellphone evidence, Judge Collins determined that the affidavit was insufficient to connect either Baldwin or his cellphone to the murder. Judge Collins ruled that the motion to suppress would be granted in part as to the cellphone evidence, but she did not reduce this ruling or any of her findings to writing before her term of office expired.

The Honorable Greg Glass succeeded Judge Collins. Judge Glass issued a written order on the motion to suppress granting the motion in its entirety without a hearing. Like his predecessor, Judge Glass did not make any written findings. The

3

State brought this interlocutory appeal of Judge Glass's written order, challenging the suppression of the cellphone evidence and Baldwin's statements.

The original court panel set the case for submission with oral argument and raised its own set of concerns. The panel told the parties that the court could not address the sufficiency of the affidavit without first addressing the lawfulness of the traffic stop, because if the traffic stop had been unlawful, then all of the evidence would need to be suppressed under the exclusionary rule. The panel also explained that the court could not determine whether Judge Glass believed that the traffic stop was unlawful or whether he had intended to adopt the finding from Judge Collins that the traffic stop was lawful.

To settle these questions, the panel abated the appeal and remanded the case to Judge Glass with instructions to clarify the scope of his order. Upon remand, Judge Glass held a brief hearing, during which he explained that he had intended to adopt all of Judge Collins's rulings. Judge Glass signed an amended order granting the motion to suppress as to the cellphone evidence only and denying the motion as to Baldwin's statements. Accordingly, the amended order mooted all the State's issues on appeal except for the one concerning the cellphone evidence.

### *Analysis*

The United States Constitution mandates that a warrant cannot issue "but upon probable cause" and must particularly describe the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. The core of this clause and its Texas equivalent is that a magistrate cannot issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) (citing U.S. Const. amend. IV and Tex. Const. art. I, § 9). Probable cause to support issuing a warrant exists when, under the totality of the circumstances, there is a "fair probability" that

4

contraband or evidence of a crime will be found. *Id*. This is a flexible, non-demanding standard. *Id.* But a magistrate's action cannot be a mere ratification of the bare conclusions of others; a magistrate cannot be a rubber stamp. *Id*.

We must conscientiously review the sufficiency of affidavits on which warrants are issued. *See id*. We may uphold a magistrate's probable cause determination only if the magistrate had a substantial basis for concluding that probable cause existed. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). When the trial court determines whether probable cause supported the magistrate's issuance of a search warrant, there are no credibility determinations, and the trial court is constrained by the four corners of the affidavit. *Id*. Although a magistrate may not baselessly presume facts that the affidavit does not support, he or she is permitted to make reasonable inferences from the facts recited in the affidavit. *Foreman v. State*, No. PD-1090-18, 2020 WL 6930819, at *2 (Tex. Crim. App. Nov. 25, 2020). Trial and appellate courts apply a highly deferential standard when reviewing a magistrate's decision to issue a warrant because of the constitutional preference for searches to be conducted pursuant to a warrant. *Id*. On appeal, we must interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences and deferring to all reasonable inferences that a magistrate could have made. *See id*.

Nevertheless, an affidavit offered in support of a warrant to search the contents of a cellphone must "state the facts and circumstances that provide the applicant with probable cause to believe . . . searching the telephone or device is likely to produce evidence in the investigation of . . . criminal activity." Tex. Code Crim. Proc. art. 18.0215(c)(5)(B). We have held that such an affidavit "must usually include facts that a cell phone was used during the crime or shortly before or after." *Diaz v. State*, 604 S.W.3d 595, 603 (Tex. App.—Houston [14th Dist.] 2020, pet.

5

granted) (citing *Foreman v. State*, 561 S.W.3d 218, 237-38 (Tex. App.—Houston [14th Dist.] 2018) (en banc) (noting, in dicta, that "an affidavit offered in support of a warrant to search the contents of a cellphone must usually include facts that a cellphone was used during the crime or shortly before or after"), *rev'd*, No. PD-1090-18, 2020 WL 6930819 (Tex. Crim. App. Nov. 25, 2020)).

We thus analyze whether there were sufficient facts in the affidavit to establish probable cause that a search of Baldwin's cellphone was likely to produce evidence in the investigation of the murder.[1] *See* Tex. Code Crim. Proc. art. 18.0215(c)(5)(B). The affidavit did not contain any particularized facts connecting a cellphone to the offense, which we have required in other warrant cases involving cellphones. *See, e.g.*, *Diaz*, 604 S.W.3d at 604 (in a case involving burglary during an aggravated assault, the magistrate could reasonably infer the perpetrators "possessed or utilized one or more cell phones before or during the planning or commission of the offense" because "several parts of one or more cell phones [were found] at the scene" and "the intruders' scheme [involved] pretending to be police officers [which] necessitated planning"); *Aguirre v. State*, 490 S.W.3d 102, 116 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (in a case for continuous sexual abuse of a young child, the affidavit established that the defendant had photographed the child complainant with a cellphone); *Walker v. State*, 494 S.W.3d 905, 908–09 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (in a capital murder case, the affidavit established that the defendant and the complainant had discussed the commission of crimes over a cellphone).

---

[1] An affidavit offered in support of a warrant to search the contents of a cellphone must also state the facts and circumstances that provide the officer with probable cause to believe that "criminal activity has been, is, or will be committed." Tex. Code Crim. Proc. art. 18.0215(c)(5)(A). The parties do not dispute that a murder was committed, and we do not address this issue as it is unnecessary to our disposition of the case.

## I. Facts Surrounding the Offense

The affidavit establishes that the perpetrators left the scene of the offense in a white, four-door sedan. Two neighbors saw a white, four-door sedan in the neighborhood on the day before and the day of the murder. A surveillance video recorded a white sedan in the neighborhood the day before and the day of the murder. There are no facts from which to infer that the witnesses all saw the same sedan or that the surveillance video recorded the same sedan as the one seen by the witnesses. The only fact tying Baldwin to the neighborhood is the photograph of the license plate on his car taken the day before the murder. None of the facts in the affidavit ties Baldwin or the cellphone found in his vehicle to the commission of this or any other offense. At most, the magistrate could infer that Baldwin (or someone driving his car) was in the neighborhood the day before the murder.

The dissent contends that we "refuse[] to defer to the magistrate's implied finding [that all three witnesses saw the same sedan] because the first two witnesses did not record a license plate." To the contrary, for the magistrate's implied finding to be reasonable, the warrant application *must* show a correlation between Baldwin's vehicle and the vehicle used in the offense. *See Duarte*, 389 S.W.3d at 354. There is no evidence that Baldwin's car, which was in the neighborhood on the day before the murder, was the same car in the neighborhood on the day of the murder and used in the offense. It would strain credulity to conclude in a county with nearly five million people that evidence of a crime probably would be found in someone's car just because he was in the neighborhood on the day before the offense in a car the same color as the one driven by a suspect who also happened to be Black. *See, e.g.*, *Amores v. State*, 816 S.W.2d 407, 412-16 (Tex. Crim. App. 1991) (holding warrantless arrest was not supported by probable cause when police received report of burglary "in progress involving a black male putting something in the trunk of a

7

car," the location of the burglary was at an apartment complex that had numerous previous reports of criminal activity, the officer "within one minute of the report" observed a Black male sitting behind the wheel of a car in the parking lot of the apartment complex, the Black male was about to drive away, and the officer "knew no 'blacks' lived at these apartments"). The warrant application yields no nexus between Baldwin's vehicle and the vehicle at the scene of the offense. *See Diaz*, 604 S.W.3d at 603-04 (acknowledging that "facts in the affidavit [must] establish a sufficient nexus between the cell phones [to be searched] and the alleged offense").

In its response to Baldwin's motion for en banc reconsideration, the State relies on *Ford v. State* in an attempt to show a nexus between the white sedan that Baldwin was driving four days after the incident and the white sedan from the incident. However, the car in the *Ford* case was specifically identified (Chevy Tahoe with roof rack and horizontal stripes), and a plethora of other specific facts linked the defendant to the incident, such as DNA, witness testimony, and surveillance photos of the vehicle on the night of the incident. 444 S.W.3d 171, 193 (Tex. App.— San Antonio 2014), *aff'd*, 477 S.W.3d 321 (Tex. Crim. App. 2015). The dissent takes issue with the fact that we require a description of the vehicle more specific than white, four-door sedan to support probable cause. But that is exactly the point. There is nothing distinctive that would tie Baldwin's white car to the one seen at the offense.

Nothing in this record beyond the color of the sedan, its number of doors, and the race and gender of its driver indicates that the sedan in the affidavit was the same sedan as the one seen in the neighborhood. Without any further information connecting the two vehicles, it is not reasonable to infer that they were one and the same in the third largest county in the country. *Cf. Amores*, 816 S.W.2d at 416 (holding lack of description of suspect beyond his gender and race, general

8

description of vehicle, and lack of information regarding source or credibility of information were insufficient facts to support probable cause to believe the suspect had committed a burglary).

## II.     Reasonableness of Cellphone Search

We discuss the lack of nexus between the sedan and the crime as a significant aspect of the case because it lays the predicate to determine whether there was probable cause to search the cellphone. But our above discussion merely underpins the issue before us: whether it was reasonable for the magistrate to connect the cellphone seized from the vehicle to any evidence of the offense. As for the language in the affidavit regarding cellphones, aside from a brief statement that a cellphone was found in the sedan driven by Baldwin, the rest of the affidavit includes only generic recitations about the abstract use of cellphones. There was no connection between (1) Baldwin's sedan and the vehicle observed leaving the scene of the offense, (2) Baldwin and the offense, or (3) the cellphone and any communication or evidence surrounding the incident. The affiant stated generally that cellphones "are commonly utilized to communicate in a variety of ways such as text messaging, calls, and e-mail or application programs such as google talk or snapchat" and that "it is common for suspects to communicate about their plans via text messaging, phone calls, or through other communication applications."

A cellphone is unique in that it can receive, store, and send the "most intimate details of a person's individual life." *State v. Granville*, 423 S.W.3d 399, 408 (Tex. Crim. App. 2014); *see also Riley v. California*, 573 U.S. 373, 386 (2014) ("Cell phones . . . place vast quantities of personal information literally in the hands of individuals."). Accordingly, generic, boilerplate language like the language in the affidavit that a smart phone may reveal information relevant to an offense and that suspects might communicate about their plans via cellphone is not sufficient to

9

establish probable cause to seize and search a cellphone. *See Martinez v. State*, No. 13-15-00441-CR, 2017 WL 1380530, at \*3 (Tex. App.—Corpus Christi Feb. 2, 2017, no pet.) (mem. op., not designated for publication) (citing *U.S. v. Ramirez*, 180 F. Supp. 3d 491, 494 (W.D. Ky. 2016)); *see also Duarte*, 389 S.W.3d at 360 (holding boilerplate affidavit containing insufficient particularized facts did not allow magistrate to determine probable cause to issue a search warrant).

Under the dissent's reasoning, any time more than one person is involved in a crime, police officers would have probable cause to search a cellphone. That is not the law in Texas. Our binding precedent requires a connection between cellphone usage and the offense. *See, e.g.*, *Diaz*, 604 S.W.3d at 604 (involving cellphone parts found at location of offense and evidence that suspects planned to impersonate officers); *Walker*, 494 S.W.3d at 909 ("A substantial basis for probable cause rests in the allegations that appellant and the complainant had been communicating via appellant's cell phone, planning robberies around the time that the complainant was killed while being robbed of possessions later found in appellant's possession."). The dissent states that boilerplate language is enough to establish probable cause when "coupled with other facts," but the only other fact in this case is that two Black men committed the offense together.[2] No other Texas case cited by the dissent goes so far as to hold that the only "other fact" needed is that two suspects were involved in planning an offense. For example, in *Diaz*, a case relied on by the dissent, several cellphone parts were found at the scene, tying at least one cellphone to the offense. 604 S.W.3d at 604. Similarly, in *Walker*, a capital murder case, the suspect "exchanged numerous text messages and phone calls with the complainant around

---

[2] The dissent says that "the capital murder was committed by two individuals who planned their offense over at least two days" but points to no evidence that the suspects planned the offense over at least two days other than the fact that Baldwin's white sedan was seen in the neighborhood the day before the offense.

the time of the shooting," tying a cellphone to the murder. 494 S.W.3d at 909. Here, *no facts* tie a cellphone to the offense. There are no facts showing "that a cell phone was used during the crime or shortly before or after," which we have noted is usually required to support a finding of probable cause. *Compare Diaz*, 604 S.W.3d at 603, *with Foreman*, 2020 WL 6930819, at \*5 (holding magistrate could reasonably infer auto shop had a video surveillance system because "concrete indications" in the affidavit showed the business had "a unique need for security on its premises and had in fact deployed some security measures").

While magistrates may draw reasonable inferences from the words contained within the four corners of the affidavit, if too many inferences are drawn, "the result is a tenuous rather than a substantial basis for the issuance of a warrant." *Davis v. State*, 202 S.W.3d 149, 157 (Tex. Crim. App. 2006). In this case, the nexus between the vehicle that Baldwin was driving and the vehicle seen at the crime is tenuous at best. Extending that nexus to include Baldwin's cellphone based on nothing more than a recitation that it is common for people to communicate their plans via text messaging, phone calls, or other communication applications would be extending the reach of probable cause too far.

Considering the totality of the circumstances, we conclude that the affidavit did not contain sufficient facts to establish a fair probability that a search of the cellphone found in Baldwin's vehicle would likely produce evidence in the investigation of the murder.

### *Conclusion*

We affirm the trial court's order granting the motion to suppress evidence obtained from the cellphone found in Baldwin's vehicle.

11

/s/     Frances Bourliot
Justice

En Banc Court consists of Chief Justice Frost and Justices Christopher, Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, and Poissant. Justice Bourliot authored an En Banc Majority Opinion, which Justices Spain, Hassan, and Poissant joined in full, and which Justice Zimmerer joined as to Part II. Justice Zimmerer authored an En Banc Concurring Opinion. Justice Christopher authored an En Banc Dissenting Opinion, which Chief Justice Frost and Justices Wise and Jewell joined.

Publish — Tex. R. App. P. 47.2(b).